1  **WO**

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

9  Lenore Conklin, an individual,           )    No. CV09-2525-PHX-DGC
                                            )
10              Plaintiff,                   )
                                            )
11  vs.                                      )    **ORDER**
                                            )
12  Continental American Insurance           )
    Company, a corporation,                  )
13                                           )
                Defendant.                   )
14  _____ )

On January 20, 2010, Plaintiff Lenore Conklin filed a motion to remand this case to state court. Dkt. #12. The motion is fully briefed. Dkt. ##21, 22-1. No party has requested oral argument. For reasons that follow, the Court will grant the motion.

**I.    Background.**

Plaintiff had a cancer insurance policy ("the Plan") with Defendant Continental American Insurance Company. She obtained the policy through her employment with Southwest Airlines. Dkt. #4 at 7-8. The Plan is a "Group Cancer Insurance Policy" obtained by Plaintiff's union – "IAMAW Air Transport District 142" ("the Union") – on behalf of union members who are employed by Southwest Airlines and who decide to enroll in the Plan. Dkt. #21 at 2; Dkt. #21-1 at 2. Participation in the Plan is completely voluntary, and the Union itself makes no monetary contributions to the Plan. Dkt. #21 at 2, 8-12.

In 2006, Plaintiff added her husband to her cancer policy under "Plan 3," which entitled them to receive "$10,000 on the first occurrence of cancer and a limit of $50,000 for chemotherapy and radiation treatments." Dkt. #4 at 8. On December 19, 2007, Plaintiff's

husband was diagnosed with lung cancer, and also began undergoing treatment to remove a tumor from his brain. *Id.* Continental initially paid Plaintiff the cancer policy benefits under "Plan 3," but later contacted Plaintiff and stated that it had overpaid the benefit and demanded reimbursement of $5,499.13 within thirty days. *Id.* at 9. When Plaintiff questioned the overpayment, Continental informed her that her husband was actually insured under "Plan 2" instead of "Plan 3," which provided significantly lower benefits. *Id.*

Based on this discrepancy and Continental's failure to pay full "Plan 3" benefits, Plaintiff sued Continental in Arizona state court, alleging that Continental breached its insurance contract and its duty of good faith and fair dealing. *Id.* at 10-12. Continental removed the action to this Court pursuant to 28 U.S.C. § 1331 on the ground that "Plaintiff's claims, in whole or in part, arise under and are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et. seq., thus supplying federal question jurisdiction." Dkt. #1 at 1. Plaintiff seeks remand to state court on the ground that Continental has failed to show that the Plan is actually governed by ERISA. Dkt. #12.

## II.    Legal Standard.

Pursuant to the removal statute, 28 U.S.C. § 1441, any civil action brought in state court over which the federal district courts have original jurisdiction may be removed to the federal district court where the action is pending. 28 U.S.C. § 1441(a). Courts strictly construe the statute against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Indeed, there is a "strong presumption" against removal and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* Defendant bears the burden of establishing that removal is proper. *Id.* "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

The question before the Court is whether Continental has met its burden of showing that the Plan is an "employee welfare benefit plan" governed by ERISA. ERISA defines an "employee welfare benefit plan" as "[a]ny plan, fund, or program which . . . is . . . established

or maintained by an employer or by an employee organization . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants . . . through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits[.]" 29 U.S.C. § 1002(1). The question in this case is whether the Plan was established or maintained by "an employee organization" – the Union – within the meaning of this statute. "The existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person." *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1149 (9th Cir. 2000) (internal quotations and citation omitted).

Under relevant regulations, a plan is not governed by ERISA if four "safe harbor" conditions are satisfied:

(1) No contributions are made by an employer or employee organization;

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). The Ninth Circuit has "uniformly adopted the position" that a plan is conclusively governed by ERISA "when an employer fails to satisfy any one of the four requirements of the safe harbor regulation." *Stuart*, 217 F.3d at 1153.

**III.    Analysis.**

Continental argues that the Plan is covered under ERISA because requirement three of the safe harbor is not satisfied. Because Continental does not contend that requirements one, two, and four are not satisfied, the Court will assume they are satisfied.

Continental contends that the third requirement is not satisfied because (1) the Union did not "solely" permit Continental to publicize the Plan, collect premiums, and remit them,

and (2) the Union endorsed the Plan. Dkt. #21 at 9-13. The Court disagrees.

## A. "Solely" Permit.

Continental argues that "[t]he plain language of the safe harbor regulation is clear that the employer's functions with respect to the program must be limited 'solely' to permitting the insurer to publicize the program, collecting premiums through payroll deductions and remitting them to the insurer." Dkt. #21 at 9 (citing 29 C.F.R. § 2510.3-1(j)(3)). It argues that the Union went "far beyond these narrow confines by submitting an application for the Group Cancer Policy, contracting with [Continental] to provide Plan benefits to its members, serving as Policy holder, communicating with its members about the benefits, negotiating the terms of coverage, actively engaging in the enrollment process and being involved in individual claims." Dkt. #21 at 10.

Continental cites several cases from outside the Ninth Circuit which, it contends, show that an employer's functions must be "solely" limited to the express language of 29 C.F.R. § 2510.3-1(j)(3). *See Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 977 (5th Cir. 1991); *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1213 (11th Cir. 1999); *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1265-67 (11th Cir. 2004). The Ninth Circuit, however, has stated that an "employer's failure to limit itself to the activities explicitly outlined in the third requirement of the safe harbor regulation . . . [is] not conclusive to determining whether an ERISA plan was established." *Stuart*, 217 F.3d at 1153. Even if the third requirement has not been complied with in every particular, the evidence could still lead "a reasonable person to conclude that the employer satisfied the third requirement of the safe harbor regulation." *Id*. In making these statements, the Ninth Circuit was discussing its decision in *Zavora v. Paul Revere Life Insurance Co.*, 145 F.3d 1118 (9th Cir. 1998). The question before the court in *Zavora* was whether the third requirement was satisfied even though the employer served as the plan administrator, an activity that went beyond the "sole function" language of the third requirement. *Zavora* held that the employer's role as plan administrator was not dispositive because evidence submitted by the plaintiff suggested that the employer was an administrator in name only. *Zavora*, 145 F.3d at 1121. The employer's title of plan

administrator had to be "considered along with all the surrounding circumstances to determine whether an ERISA plan exists." *Id.* (internal quotation and citation omitted). As the Ninth Circuit explained in *Stuart*: "*Zavora* instructs that an employer can be a plan administrator in name only and still satisfy the four requirements of the safe harbor regulation, even though being a plan administrator is not listed in the safe harbor's third requirement." 217 F.3d at 1153.

This law makes clear that strict adherence to the precise language of the third requirement is not necessary. Courts must consider all of the surrounding circumstances when deciding whether the safe harbor requirements have been satisfied. The Court therefore cannot conclude that the Plan fails the third requirement simply because the Union did not solely limit itself to the activities specified in the third requirement. Rather, the Court must examine the Union's activities and determine whether they are such that a reasonable person could conclude that the third requirement is met. *See Stuart*, 217 F.3d at 1153.

As discussed above, Continental argues that the Union engaged in the following acts that went beyond the confines of the third requirement: (1) it submitted the insurance application, (2) it contracted with Continental, (3) it served as the policy holder, (4) it communicated with its members about the benefits, (5) it negotiated the terms of coverage, (6) it engaged in the enrollment process, and (7) it became involved with individual claims. Dkt. #21 at 10. Applying the reasonable person standard, these activities do not show that the Plan fails the third requirement.

Acts (1), (2), (4), (5), and (6), taken together, show only that the Union arranged for the coverage and then advertised it. The acts do not necessarily establish that there is an ERISA plan so long as the Union makes no monetary contributions on behalf of its members, which it does not. *See Credit Mangers Assoc. of S. Cal. v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987) (suggesting that an employer that "arrange[s] for a 'group-type insurance program'" does not create an ERISA plan if it thereafter is a mere

advertiser who makes no contributions on behalf of its employees).[1]

As to act (3), the parties dispute whether the Union was actually the policyholder. The policy names the policyholder as "IAMAW Air Transport District 142, *For Members who are Employees of Southwest Airlines*." Dkt. #21-1 at 2 (emphasis added). To the extent the Union can be characterized as the policyholder at all, this language makes clear that it holds the policy only for the Union members who voluntarily choose to purchase the policy's coverage and pay their own premiums. Continental does not contend that the Union itself is an insured under the policy, pays premiums, or is entitled to benefits. Thus, the Union is the policyholder in name only – the true owners and beneficiaries are the Union members who choose to enroll. If an employer's being a plan administrator in name only does not exclude a plan from requirement three of the safe harbor, as the Ninth Circuit held in *Zavora*, then being a policyholder in name only does not either. *Zavora*, 145 F.3d at 1121.

As to act (7), the only evidence that Continental has provided of the Union's "involvement" with individual claims is that, on a few occasions, a Union representative called Continental to request a form or inquire about a claim for a member. Dkt. #21 at 8. Such activity does not approach the level of involvement of plan administrators, and shows little more than the Union occasionally seeking to assist its members, something unions do frequently on a variety of employment-related issues.

---

[1] In *Stuart*, the Ninth Circuit stated that courts should consider not only the four requirements of the safe harbor, but also ERISA's "conventional tests." *Stuart*, 217 F.3d at 1145 n.4. *Stuart* does not identify the conventional tests, but does cite, among other cases, to *Hansen v. Continental Insurance Co.*, 940 F.2d 971, 978 (5th Cir. 1991), in which the conventional test is based on "the employer . . . and its involvement with the administration of the plan." *Hansen* states that, "considering the history, structure and purposes of ERISA, we cannot believe that that Act regulates bare purchases of health insurance where . . . the purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." 940 F.2d 971 (quoting *Taggart Corp. v. Life and Health Benefits Admin., Inc.*, 617 F.2d 1208 (5th Cir. 1980)) (ellipses in original). As discussed below, the Union's involvement effectively ended after it negotiated and obtained the Plan for its members. Given *Hansen*'s discussion of the traditional test, the Court cannot conclude that the Union's having arranged for the Plan brings it outside the third requirement or renders the Plan subject to ERISA.

In addition to the insufficiency of the facts discussed above, the Court notes that the Union, in introducing the Plan to its members, expressly advised as follows:

> Your union wants you to be aware that these benefits exist and that they may be helpful to you. Your union, however, is not a party to any agreement entered into by you and insurance company and is not responsible in any way for the operation or administration of any [p]lans.

Dkt. #12-1 at 3.

Continental concedes that three of the four safe harbor requirements are satisfied – the Union made no contributions to the Plan, participation by Union members was completely voluntary, and the Union received no consideration for the Plan. The Court concludes that the Union's actions were consistent with the spirit and intent of the third requirement – it arranged for the insurance coverage, permitted Continental to publicize the Plan to Union members, collected premiums, and remitted them to the insurance company. Continental bears the burden of proof as the party seeking to retain federal court jurisdiction. It has failed to show that the Plan falls outside the third requirement of the safe harbor and therefore is subject to ERISA.[2]

## B. Endorsement.

Continental also argues that the third requirement is not established because the Union endorsed the Plan. In support of its argument, Continental cites two cases – *Thompson v. American Home Assurance Co.*, 95 F.3d 429, 436 (6th Cir. 1996), and *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1136 (1st Cir. 1995). Even if these two cases set out the Ninth Circuit standard, which Continental has not shown, the Court finds that they do not support a finding that the Union endorsed the program in this case. In *Johnson* and *Thompson*, the courts stated that a finding of endorsement requires more than a recommendation of a plan and that "the proper focus was on whether employees could reasonably conclude that the

---

[2] Plaintiff also contends that the Plan does not fall under ERISA because it does not meet a different Ninth Circuit "test to determine whether a plan is a federally pre-empted ERISA plan[.]" Dkt. #12 at 3. Because Continental does not seek to utilize this test, the Court need not consider it.

employer had endorsed the policy based on their observation of the employer's activities in connection with the plan." *Thompson*, 95 F.3d at 436 (citing *Johnson*, 63 F.3d at 1134, 1137 n.6). In this case, members received announcements of the Plan on Union letterhead. Dkt. #21-2 at 6, 12, 15. Continental argues that "[n]o participant who received the summary with the Union's logo on the front page and a letter from the Union on the second page would fail to understand that the Union, if not explicitly guarantying the benefits, was endorsing the program generally[.]" Dkt. #21 at 11. The Court does not agree. As noted above, the Union letter introducing the Plan specifically stated that the Union wanted the members to "be aware that these benefits exist and that they may be helpful to you." Dkt. 12-1 at 3. The letter explained, however, that the Union "is not a party to any agreement entered into by you and insurance company and is not responsible in any way for the operation or administration of any [p]lan." *Id.* The Court does not find this to be endorsement under *Thompson* and *Johnson*.

Moreover, in examining the applicable Ninth Circuit law, the Court has found only three situations where the Ninth Circuit has found that an employer endorsed a plan, none of which apply here: (1) when the employer is the administrator of the plan, *see Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 493 (9th Cir. 1988) (stating that, "as the administrator of the plan," the employer endorsed it); *Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1996) (stating that employer endorsed the plan by serving as administrator), (2) when the employer "endorse[s] the plan as an ERISA plan" by, for example, regularly stating that the plan is an ERISA plan or by filing required ERISA governmental paperwork, *see Pacificare Inc. v. Martin*, 34 F.3d 834, 837 (9th Cir. 1994), and (3) when the employer requires the employees to participate in the plan, *see Silvera v. Mutual Life Ins. Co. of N.Y.*, 884 F.2d 423, 426 (9th Cir. 1989). Continental has failed to show that any of these circumstances exist.

**IV. Conclusion.**

Continental has failed to carry its burden of showing that the Plan is governed by ERISA. As a result, the Court cannot find that there is no "doubt as to the right of removal

in the first instance." *Gaus*, 980 F.2d at 566.

**IT IS ORDERED** that Plaintiff's motion to remand (Dkt. #12) is **granted**.

DATED this 20th day of April, 2010.

David G. Campbell
United States District Judge